IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FRANCESKA ECHEVARRY FEEBO, : Civ. No. 1:24-CV-2012
: 
Plaintiff, :
:
v. :
: (Chief Magistrate Judge Bloom)
FRANK BISIGNANO, :
Commissioner of Social Security,[1] :
:
Defendant. :

## MEMORANDUM OPINION

## I. Introduction

Franceska Echevarry Febo filed a Title II application under the Social Security Act for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, on September 7, 2021. (Tr. 22). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Echevarry Febo was not disabled from her alleged onset date of disability of December 19,

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

2019, through January 5, 2024, the date of the ALJ's decision. (Tr. 22.

36).

Echevarry Febo now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

On September 7, 2021, Echevarry Febo applied for a period of disability insurance benefits and supplemental security income, citing an array of physical and mental impairments, including asthma, carpal tunnel syndrome, diabetes mellitus, obstructive sleep apnea, obesity, fibromyalgia, vision loss, post-traumatic stress disorder, attention-deficit hyperactivity disorder, major depressive disorder, and generalized anxiety disorder. (Tr. 25). Echevarry Febo was 34 years old at the time

of the alleged onset of disability, had at least a high school education, and had past relevant work as a hand packager and forklift operator. (Tr. 34).

With respect to the alleged impairments, the record revealed the following: The earliest relevant medical records in this matter are from November of 2019, when Echevarry Febo reported to urgent care complaining of a cough. (Tr. 458). Dr. David Ling's examination returned normal results except for expiratory wheezing and crackles upon auscultation. (*Id.*).

In July of 2020, Echevarry Febo underwent a pulmonary function test with Dr. Qammar Abbas at WellSpan Health. (Tr. 742). The results were normal except for some moderate restrictive ventilatory impairment. (*Id.*).

Echevarry Febo received x-rays of her chest in February of 2021, which were unremarkable. (Tr. 734-36). Around this time, Echevarry Febo also complained of vocal issues. (Tr. 421). An examination by Dr. John Moffitt found reflected nodules, which were biopsied in March 2021 and determined to be benign. (Tr. 426). Another chest x-ray in March of

3

2021 showed no evidence of acute pulmonary disease. (Tr. 806-07). In June of 2021, Echevarry Febo reported to the Lebanon Good Samaritan Hospital emergency department, complaining of headaches, body aches, and fatigue. (Tr. 723). A physical examination was unremarkable, and she was discharged the next day. (Tr. 726).

Echevarry Febo presented with COVID-19 in September 2021, which in November, led to pneumonia and required a one-week hospitalization. (Tr. 462-63, 554). She had another unremarkable chest x-ray in January of 2022. (Tr. 552-53).

In February 2022, pursuant to her application for disability benefits, Echevarry Febo reported headaches, joint pain, and some issues with personal care. (Tr. 314, 320-23). In March of 2022, a pulmonary function test showed some restriction but no large air obstruction. (Tr. 1304). That same month, Certified Registered Nurse Practitioner ("CRNP") MaryLouise Deaven examined Echevarry Febo and noted bilateral wrist tenderness but otherwise found normal strength, tone, and movement in her extremities. (Tr. 1046-49). CRNP Deaven referred Echevarry Febo for an electromyogram, which she underwent in June of

2022, and which showed severe carpal tunnel syndrome in her right wrist and mild carpal tunnel syndrome in her left wrist. (Tr. 1108).

In August of 2022, Echevarry Febo tested positive for diabetes mellitus. (Tr. 1270). That same month, Echevarry Febo consulted a specialist, Dr. Jitesh Umarvadia, for her carpal tunnel syndrome. (Tr. 1723). That consultation confirmed carpal tunnel syndrome, but showed normal range of motion and strength, and negative tests for varus and valgus. (Tr. 1732-33). Doctors recommended Echevarry Febo undergo a carpal tunnel release procedure, but, as of March 2023, she had not done so. (Tr. 1352).

Echevarry Febo attended physical therapy for her fibromyalgia throughout May and June of 2023, and reported some relief. (Tr. 1500-1600). In July of 2023, she experienced an asthma exacerbation and received another chest x-ray, which was again unremarkable. (Tr. 1754-55).

It is against this factual backdrop that the ALJ conducted a hearing in Echevarry Febo's case on August 16, 2023. (Tr. 42). Echevarry Febo and a vocational expert ("VE") both testified at this hearing. Echevarry

Febo testified about her asthma, daily headaches, her limitations in standing and walking due to pain, her mental health symptoms, and her treatment with her therapist. (Tr. 46-54). The VE first classified Echevarry Febo's past work, then answered hypothetical questions about appropriate occupations for an individual with Echevarry Febo's background and specific types of limitations. (Tr. 55-61).

Following this hearing, on January 4, 2024, the ALJ issued a decision denying Echevarry Febo's application for benefits. (Tr. 22-36). In that decision, the ALJ first concluded that Echevarry Febo met the insured status requirement through March 31, 2023, and had not engaged in substantial gainful activity since her alleged onset date of December 9, 2019. (Tr. 24). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Echevarry Febo suffered from the following severe impairments: asthma, carpal tunnel syndrome, diabetes mellitus, obstructive sleep apnea, obesity, fibromyalgia, vision loss, post-traumatic stress disorder, attention-deficit hyperactivity disorder, major depressive disorder, and generalized anxiety disorder. (Tr. 25). At Step 3 the ALJ determined that Echevarry Febo did not have

an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Between Steps 3 and 4 the ALJ concluded that Echevarry Febo retained the residual functional capacity to:

> [P]erform perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, the undersigned finds the claimant can only occasionally perform postural movements, except that the claimant can never climb ladders, ropes, or scaffolds; the claimant can make no use of very small print; the claimant must avoid concentrated exposure to loud noise, fumes, odors, dust, gases, poor ventilation, dangerous machinery, and unprotected heights; and the claimant is limited to simple, routine tasks involving only simple work-related decisions with few, if any, work place changes.

(Tr. 28).

In reaching this RFC determination, the ALJ considered Echevarry Febo's reported, subjective symptoms, and found that "[d]espite the claimant's allegations regarding physical, cognitive, executive, and adaptive limitations, and despite the claimant's assertion that her family must come to her apartment to help her perform routine chores," she was not as limited as those depictions implied, as she "admitted in the record that she lives in her apartment alone and remains capable of preparing daily meals, doing light cleaning, sweeping floors, washing dishes,

7

laundering clothes, and shopping in stores for groceries." (Tr. 29). The ALJ explained that those abilities "do not suggest a degree of impairment consistent with disability." (*Id.*). The ALJ also found that "the medical evidence does not support the allegations regarding the intensity, persistence, and limiting effects of the claimant's impairments [,]" and then reviewed the medical record evidence which supported that conclusion. (Tr. 29-32).

The ALJ next considered the medical opinions on record. He was persuaded by the opinions of the state agency medical consultants, who determined Echevarry Febo was capable of light exertional work with some restrictions. (Tr. 32). The ALJ found those conclusions were consistent with the medical treatment record showing mostly mild impairments and was supported by Echevarry Febo's demonstrated capacity for independent living. (*Id.*).

The ALJ found Dr. Ahmed Kneifati's opinion, that Echevarry Febo was capable of light exertional work with some restrictions, mostly persuasive. (Tr. 32.). He found that portion of the opinion was consistent with the medical record and supported by the findings of the state agency

medical consultants. (*Id.*). But the ALJ was not persuaded by Dr. Kneifati's opinion that Echevarry Febo had restrictions in reaching, pushing, and pulling, finding those restrictions inconsistent with Dr. Kneifati's own observations showing a full upper body range of motion. (*Id.*).

The ALJ was not persuaded by the opinion of Dr. James Goodyear, the consultative medical examiner, who found that Echevarry Febo was capable of light exertional work but with a limitation to three hours of standing or walking in an eight-hour workday. (Tr. 33). The ALJ found that limitation was "inconsistent with the longitudinal medical record showing little evidence of any persistent/pervasive deficiencies in the claimant's gait and stance." (*Id.*).

The ALJ also considered the mental health opinions on record. He was persuaded by the opinion of the consultative medical psychological examiner, Dr. Kathleen Ledermann. (Tr. 33). Dr. Ledermann opined that Echevarry Febo had "no more than mild-to-moderate limitations in her ability to understand, remember, and carry out simple instructions and make judgments on simple, work-related decisions" and "has no more

9

than moderate-to-marked limitation in her ability to understand, remember, and carry out complex instructions and make judgments on complex, work-related decisions [.]" (*Id.*). The ALJ found this opinion was consistent with Dr. Ledermann's own observations, and well-supported by Echevarry Febo's capabilities, specifically preparing her own meals and socializing with others. (*Id.*). But the ALJ also concluded that Echevarry Febo was more limited than Dr. Ledermann opined regarding her ability to adapt to changes and manage herself. (*Id.*).

The ALJ was not persuaded by the opinion of Echevarry Febo's outpatient counselor, Licensed Marriage and Family Therapist ("LMFT") Andres Ramirez. (Tr. 33). LMFT Ramirez opined that Echevarry Febo had "marked and extreme limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt and manage herself." (*Id.*). The ALJ concluded those limitations were inconsistent with the medical records, showing moderate symptoms in these areas and a "good or very good capacity to respond to and benefit from therapy [,]" and that the limitations were unsupported by LMFT Ramirez's own observations on

10

the day his opinion was rendered, which showed Echevarry Febo was "fully alert and oriented; demonstrated no more than moderate anxiety, sleep disturbances, or fears; and showed very good benefits from her therapy." (Tr. 44-34).

The ALJ then found at Step 4 that Echevarry Febo could not perform her past work but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as cafeteria attendant, housekeeping cleaner, and marking clerk. (Tr. 35). Having reached these conclusions, the ALJ determined that Echevarry Febo had not met the demanding showing necessary to sustain this claim for benefits and denied this claim. (Tr. 36).

This appeal followed. (Doc. 1). On appeal, Echevarry Febo challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence. (Doc. 13 at 12-30). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

III.  **Discussion**

### A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

12

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*,

13

No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but

rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

15

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

16

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

18

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C.  Step 2 Analysis

At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," 20 C.F.R. 404.1520(c), or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).   This Step 2 inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir.

2003).  The claimant bears the burden to show that an impairment should be considered severe.  *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

### D.  <u>Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms</u>

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations.  *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential.  *Id.*  However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted).  An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted).  As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir.

2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms.  20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.  Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record.  SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p.  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record.  20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.  20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.  SSR 16–3p.  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

E. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in September of 2021 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§

23

404.1520c(c)(1), 416.920c(c)(1).  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."  *Mason*, 994 F.2d at 1066.  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.  *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).  On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a

medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### F.  This Case Will Be Affirmed

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154.  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Echevarry Febo first argues that the ALJ erred in his evaluation of the evidence and that "more substantial limitations should have been included in [her] RFC [.]"  (Doc. 13 at 14).  Echevarry Febo points to excerpts from the evidentiary record which she contends show her RFC "is not supported by the record [.]" (*Id.* at 20).  This is a straightforward request for this court to re-weigh the evidence, which we may not do. *See Chandler,* 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence [.]").  This argument is therefore unavailing.

Next, Echevarry Febo argues that the ALJ erred by failing to identify certain impairments as "severe" during Step two of the evaluative process. (Doc. 13 at 21). But Step two is merely a "de minimus screening device to dispose of groundless claims." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). The primary purpose of Step two is to determine if the claimant has at least one severe impairment, and if not, to end the evaluation process. *See* 20 C.F.R § 404.1520(a)(4)(ii), (c). Therefore, as long as one severe impairment is identified at Step two, and any non-severe impairments are considered at later steps, any error in failing to find those impairments severe is harmless. *Hammond v. O'Malley*, 735 F. Supp. 3d 567, 578-79 (E.D. Pa. 2024).

Echevarry Febo alleges that the ALJ should have found eight other severe impairments: migraine headaches, cervical pain, neuropathy, severe insomnia, tachycardia, hearing, issues with her vocal cords, and feelings of helplessness. (Doc. 13 at 21-22). As to the first five impairments on the list, assuming *arguendo* that they are medically determinable impairments, we conclude the ALJ sufficiently considered

them.  The ALJ considered headaches at Step two, as well as when crafting the RFC.  (Tr. 25, 28).  He referenced cervical tenderness when discussing Dr. Kneifati's medical opinion.  (Tr. 32).  The ALJ acknowledged Echevarry Febo's insomnia diagnosis and considered it in crafting the RFC.  (Tr. 31, 34).  He noted her tachycardia and discussed neuropathy in the context of Echevarry Febo's carpal tunnel syndrome.  (Tr. 30-34).

The other three alleged impairments—hearing issues, vocal cord issues, and feelings of helplessness—are not explicitly considered in the ALJ's decision.  But Echevarry Febo bears the burden of presenting evidence establishing all medically determinable impairments, and she has not satisfied that burden for these impairments.  20 C.F.R. §§ 404.1512(a); 404.1545(a)(3).  As evidence of hearing issues, Echevarry Febo points to only one medical record which summarily notes the presence of tinnitus with no further context.  (Tr. 409).  That is insufficient to satisfy the requirement that evidence purporting to establish a medically determinable impairment shows the "nature and severity of [the] impairment [.]" 20 C.F.R. § 404.1512(a)(2)(i).  Echevarry

Febo offers no evidence for the proposition that vocal cord issues or feelings of helplessness were medically determinable impairments. We therefore conclude these three alleged impairments have not been shown to be medically determinable impairments, and thus, the ALJ was not required to consider them. In sum, we find this argument unavailing, as we see no error in the ALJ's treatment of the medically determinable impairments, and because any error in the ALJ finding these impairments non-severe is definitionally harmless as the claim survived Step two.

Lastly, Echevarry Febo challenges the ALJ's treatment of medical opinion evidence. She argues that the ALJ failed to "afford proper weight" to the medical opinion of her therapist, Andres Ramirez. (Doc. 13 at 27). As discussed, we may not re-weigh the evidence, and that includes medical opinion evidence. *Chandler,* 667 F.3d at 359. Echevarry Febo argues further that "[t]he ALJ did not provide any examination of the opinions set forth in the records from Andres Ramirez using the factors under 20 C.F.R. § [404.1520c(c).]" (*Id.*). We disagree. As explained above, the ALJ is only obligated to reference two factors

28

from that statute in his decision: supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ here found that the limitations Ramirez opined necessary:

> [A]re *inconsistent* with Mr. Ramirez's records showing the claimant's symptoms are generally observed as no more than moderate in severity and showing the claimant has generally demonstrated a good or very good capacity to respond to and benefit from therapy (Exhibits 5F, 10F, 20F). Additionally, the limitations opined are *poorly supported* by Mr. Ramirez's own observations of the claimant on the day the opinion was rendered, noting the claimant remained fully alert and oriented; demonstrated no more than moderate anxiety, sleep disturbances, or fears; and showed very good benefits from her therapy (Exhibit 20F, page 21).

(Tr. 33-34) (emphases added).

The ALJ clearly examined the supportability and consistency of LMFT Ramirez's opinion and made multiple citations to the record. No more is required. We conclude there was no error in the ALJ's treatment of the medical opinion evidence.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 18th day of July 2024.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge